# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| CHERYL HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Civ. Act. No. 21-2571 (RCL) |
| UNITED STATES,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Currently pending before the Court is the Motion for Summary Judgment ("MSJ"), ECF No. 38, filed by Defendant the United States, which is opposed, *see* Opposition ("Opp'n"), ECF No. 39, by Plaintiff Cheryl Hall. For the reasons explained below, Defendant's Motion for Summary Judgment is granted, and judgment is entered on its behalf.

## I. BACKGROUND

Hall brings this case pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). *See* Compl. ¶ 2; Compl. Exhibit 1 (Standard Form 95) ("SF 95"); Compl. Supp. ¶ 2; Am. Compl. ¶¶ 2, 4–6. She alleges that, on September 18, 2017, she was visiting the U.S. Capitol Building for a tour of the premises. *See* Compl. ¶ 1; Compl. Supp. ¶ 1; Am. Compl. ¶ 7. After

---

[1] Hall has sued the Architect of the Capitol, *see generally* Complaint ("Compl."), ECF No. 1; "); Compl. Supplement ("Compl. Supp."), ECF No. 4; Amended Complaint ("Am. Compl."), ECF No. 31, but the "United States of America is the only proper defendant in a suit under the FTCA[,]" *Chandler v. Fed. Bureau of Prisons*, 226 F. Supp. 3d 1, 6, n.3 (D.D.C. 2016); *see also Coulibaly v. Kerry*, 213 F. Supp. 3d 93, 125 (D.D.C. 2016) ("[A] plaintiff may not bring tort claims against federal officials in their official capacities or against federal agencies; the proper defendant is the United States itself[.]"); 28 U.S.C. § 2679(a). Notwithstanding, the Court is authorized to substitute the United States as a defendant, *see* 28 U.S.C. §§ 1346, 2671–2680; *Hui v. Castaneda*, 559 U.S. 799, 801–02 (2010), and it does so in this case.

concluding the tour, Hall exited the Capitol Visitor Center and walked outside, down one of the surrounding stone pavement walkways. *See* Am. Compl. ¶ 1; SF 95 at 1; *see also* MSJ Exhibit C (Sep. 18, 2017 Report of U.S. Capitol Police). Hall then slipped in what she refers to as a "hole" or a "gap" located near a joint in the stone pavement, concealed by wet and slippery fallen leaves and debris. *See* Compl. ¶ 4; Compl. Supp. ¶ 1; Am. Compl. ¶ 7; SF 95 at 1; *see also* MSJ Exhibit E and Opp'n Exhibit 3 (Aug. 20, 2024 Deposition of Cheryl Hall) ("Hall Depo."), at 30–31, 34–35; Opp'n Exhibit 2 (Hall's Answers to Interrogatories) ("Pl.'s ATI") at Answers 1, 3. Hall hypothesizes that some of the grout had, at some point, "moved away" from the stone tile, resulting in the hole and creating an unevenness in the pavement, causing the ground to "undulate" beneath her. *See* Hall Depo. at 34–35; Opp'n at 2, 5. As a result, Hall lost her balance and fell to the ground, hitting her head and sustaining myriad injuries, most significantly, shattering her left knee, and she was transported to the hospital by ambulance. *See* Compl. ¶¶ 1, 8; SF 95 at 1; Am. Compl. ¶ 7, 10–12; ATI at Answer 2.

On September 30, 2021, Hall, then proceeding *pro se*, filed this lawsuit, seeking damages and alleging that Defendant was negligent and thus responsible for her injuries. *See generally* Compl.; Compl. Supp. Defendant was served with process, *see* Return of Service, ECF No. 5, and on March 7, 2022, filed its Answer, ECF No. 7. After a series of stays and extensions were granted at Hall's request, *see e.g.*, Min. Ord. (entered June 21, 2022); Min. Ord. (entered Sept. 12, 2022); Min. Ord (entered Nov. 28, 2022), the parties ultimately submitted their respective Meet and Confer Statements, ECF Nos. 21–22, and on April 24, 2023, the Court entered its first Scheduling and Discovery Order, ECF No. 23.

Hall, who proceeds *in forma pauperis* in this matter, then filed a Motion to Appoint Counsel, ECF No. 24, which was granted by Minute Order on May 25, 2023. *See* Min. Ord

(entered May 25, 2023); *see also* D.C. Local Civil Rule 83.11.  Discovery was stayed until counsel entered an appearance.  *See id*.  Appointed counsel entered an appearance for Hall on July 1, 2023, ECF No. 27, and on October 30, 2023, with Defendant's consent, *see* Notice, ECF No. 29; Answer, ECF No. 33, the Court accepted Hall's now-operative Amended Complaint, ECF No. 31, and entered a new Scheduling and Discovery Order, *see* Min. Ord. (entered Oct. 30, 2023).

A mid-discovery Status Hearing was held by the Court on May 22, 2024, and on June 21, 2024, it extended several discovery deadlines.  *See* Scheduling Order ("Sched. Ord."), ECF No. 36.  On September 17, 2024, Defendant filed its pending Motion for Summary Judgment.  Hall then filed her Opposition on October 3, 2024, and Defendant filed its Reply ("Reply"), ECF No. 40, on October 10, 2024.  Discovery closed on October 18, 2024.  *See* Sched. Ord.  The Motion for Summary Judgment is thus ripe for adjudication.

## II.  LEGAL STANDARDS

FTCA

The United States is immune from suit, except where Congress has unequivocally consented to permit a cause of action.  *United States v. Sherwood*, 312 U.S. 584, 586–87 (1941); *United States v. Testan*, 424 U.S. 392, 399 (1976).  The FTCA provides a limited waiver of this immunity for certain tort claims committed by federal agencies and employees.  *See Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999); *United States v. Kubrick*, 444 U.S. 111, 118 (1979); *Tri–State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003); *see also* 8 U.S.C. § 1346(b)(1).

"The FTCA incorporates state law, including the elements of an alleged tort as defined by state tort law."  *Girdler v. United States*, 923 F. Supp. 2d 168, 187 (D.D.C. 2013) (*citing Tri–State*, 341 F.3d at 576).  Here, the alleged acts and omissions giving rise to Hall's claim occurred

in the District of Columbia; therefore, "the law of the District of Columbia applies and the United States is only liable 'in the same manner and to the same extent as a private individual under like circumstances.'" *Id*. at 186–87 (quoting 28 U.S.C. § 2674). "Thus, the liability of the United States is the same as that of the District of Columbia as to its sidewalks, streets or highways." *Id.* at 187; *see Gilroy v. United States*, 112 F. Supp. 664, 666 (D.D.C. 1953) ("Consequently, this accident having occurred in the District of Columbia, the law governing the liability of a municipal corporation in respect to such cases is equally applicable to the United States.").

Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, a court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of her position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable

jury (or trier of fact)[2] to find in her favor.  *Id.* at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249–50 (citations omitted).

## III.  DISCUSSION

To succeed on a claim of negligence against the United States, a plaintiff must prove that her injuries were caused by an unsafe or defective condition of the street, of which the defendant had timely notice, either actual or constructive.  *See Dist. of Columbia v. Fowler*, 497 A.2d 456, 461 (D.C. 1985) ("It is the law in this jurisdiction that a party may not succeed in a negligence claim . . . for injuries sustained as a result of defective conditions in its streets or highways unless the party demonstrates . . . actual or constructive knowledge of the dangerous condition bringing about the injury.") (collecting cases).  Analogously, to establish a failure to maintain a public street, a plaintiff must show that the municipality had either actual or constructive notice of the dangerous condition, *see Rajabi v. Pot. Elec. Power Co.*, 650 A.2d 1319, 1322 (D.C. 1994), and that the street was "in fact unreasonably dangerous[,]" *Dist. of Columbia v. Freeman*, 477 A.2d 713, 718–19 (D.C. 1984), i.e., that "a violation of the reasonable standard of care is the proximate cause of the injury sustained[,]" *Dist. of Columbia v. Cooper*, 445 A.2d 652, 655 (D.C. 1982) (en banc).

Here, Hall has failed to show that Defendant had either actual or constructive notice of the alleged defective conditions, and she has also failed to show that Defendant violated any

---

[2]    Although Hall has demanded a jury trial, *see* Am. Compl. at 3, there is generally no right to jury trial under the FTCA. *See* 28 U.S.C. § 2402 ("any action against the United States under section 1346 shall be tried by the court without a jury"); 32 C.F.R. § 750.32 ("There is no right to trial by jury in suits brought under the FTCA."); *see also Osborn v. Haley*, 549 U.S. 225, 252 (2007) ("The Seventh Amendment, which preserves the right to a jury trial in suits at common law, we have held, does not apply to proceedings against the sovereign.") (citing *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981); quoting 28 U.S.C. § 2402).

reasonable standard of care, which, taken separately or together, is fatal to her claim. *See Williams v. Dist. of Columbia*, 646 A.2d 962, 963 (D.C. 1992).

As to actual notice, Defendant has submitted an affidavit from James Kaufman, a Deputy Superintendent of Capitol Grounds, who attests that the area surrounding the Capitol Visitor Center where Hall fell is under recurrent daily surveillance and inspection for hazards like debris or fallen leaves. *See* MSJ Exhibit A (Declaration of James Kaufman) ¶ 11. If such a condition existed, it is the normal practice of the maintenance staff to report it in Web Total Management Authority ("WebTMA"), the Capitol's system for tracking and scheduling maintenance tasks. *Id*. There were no system notifications of any fallen leaves, holes, gaps, defects, or other hazards, in or near the entrances to the Capitol Visitor Center, on September 18, 2017, or in the weeks immediately before and after Hall's fall. *See id*. ¶¶ 12, 14. Indeed, Hall essentially concedes that she does not have evidence of Defendant's actual notice. *See* Opp'n at 6.

That leaves only constructive notice. "Such notice is usually proved by showing that the sidewalk had remained in an unsafe condition for such period of time that the authorities, in the exercise of ordinary care, should have known of it." *Harding v. Dist. of Columbia*, 178 A.2d 920, 921–22 (D.C. 1962). To be clear, to show constructive notice, there must be evidence establishing *how long* the alleged defect existed before the injury occurred, *see id*. at 992, and here, the record is devoid of any evidence, lay or expert, as to the duration of the alleged defective conditions on the Capitol walkway.

Although Hall has offered photographs of the scene, taken immediately after her fall, those photos reveal no more than three scattered dry leaves which, particularly in September, could have fallen at any point in time, including right before her fall. *See* MSJ Exhibit B1–B3 and Opp'n Exhibit 5 (Sept 18, 2017 Photographs of Fall Site) ("Site Photos"). Moreover, if one strains to

view the photos, *perhaps* a slight angle can be gleaned from a subsection of the pavement tiles where Hall fell, although it is impossible to discern if any such nonconformity is merely a feature of the way the photographs were scanned and printed. *See id.*; *see also* Hall Depo. at 34–35. Regardless, there is no information whatsoever regarding how long this pavement deviation (or the fallen leaves) existed before Hall fell. Without more, the Court cannot sanction future guess-work by a trier of fact because "examination of the photographs [as to] whether [sic] the described hole was the result of a recent break or of a gradual deterioration in the area, unaided by any testimony from a person qualified to express an opinion on this point after examining the hole, does not constitute the proof required to establish constructive notice . . . and thereby impute negligence on [the Defendant's] part in maintaining the sidewalk." *Harding*, 178 A.2d at 922. Otherwise stated, the "mere existence" of a defect is "not sufficient to impose liability" on the government. *See Fowler*, 497 A.2d at 462.

As here, "[w]hen a plaintiff 'proves only that a hazard existed for an undetermined period of time, she has not shown that the defendant had constructive notice.'" *Martin v. Omni Hotels Mgmt. Corp.*, 206 F. Supp. 3d 115, 128 (D.D.C. 2016) (quoting *Wise v. United States*, 145 F. Supp. 3d 53, 66 (D.D.C. 2015); *Wilson v. Wash. Metro. Area Transit Auth.*, 912 A.2d 1186, 1190 (D.C. 2006)). In response, Hall argues that Defendant's regular monitoring and maintenance *should have* uncovered these defects. *See* Opp'n at 6–11. However, this argument is definitively circular; without any evidence as to how long those alleged defects existed, it is impossible for any factfinder to determine if Defendant should have reasonably discovered them. *See Martin,* 206 F. Supp. 3d at 128–29 (granting summary judgment for the defendant and finding that "there is no evidence in the record from which the jury could infer, without speculating, that the wrinkles[,]"

in a mat where the plaintiff tripped and fell, "were present when [Defendant] may have [last] inspected the mats[.]").

In arguing that Defendant should have noticed the alleged defects, Hall relies on several cases, *see* Opp'n at 6–7, all of which are readily distinguishable from this matter.  Hall relies on *Youssef v. 3636 Corp.*, 777 A.2d 787 (D.C. 2001), seemingly in support of her contention that the fallen leaves should have been discovered and abated, but her reliance is misplaced.  In *Youssef*, "snow had been falling off and on for more than twenty hours[,]" *id.* at 795, the sidewalk "was covered with snow," *id.* at 789, and the plaintiff then slipped on ice that had resulted from the acute weather conditions, *see id.* at 790.  Weather reports predicted the chance of snow near 100 percent, with approximately two inches of accumulation—conditions that contractually obligated the defendant to take specific precautionary measures—all of which created a dispute of material fact as to whether its actions were reasonable, and as to whether the ongoing snowstorm was sufficient to constitute constructive notice.  *See id.* at 790–795.  Those circumstances are incongruent to those presented in this matter.

Here, Hall contends that it was sunny and dry when she entered the Capitol Building, but upon leaving about five hours later, it was overcast, had begun to "drizzle," and the ground was somewhat wet.  *See* Hall Depo at 24–28.  Weather reports from September 18, 2017, and in the days preceding, showed that conditions ranged from clear, to scattered clouds, to overcast, to partly sunny, and with no record of any precipitation.  *See* Def. MSJ Exs. D1–D3 (Historic Weather Reports for Washington, D.C., Sept. 16–18, 2017) ("Weather Reps.").  The photographs submitted by Hall do not depict any rain or wet conditions.  *See* Site Photos; *see also Williams*, 646 A.2d at 963 (finding that the plaintiff's conclusory testimony could not defeat clear evidence in the record, including photographs of the scene, that contradicted her allegations).

8

Even if the chance of rain had been more significant, standing alone, an ordinary rainy weather forecast, or even rainy weather itself, does not suffice as constructive notice.  *See Croce v. Hall*, 657 A.2d 307, 312 (D.C. 1995)  ("In general, changes in the weather are a part of everyday life, and citizens can be expected to adjust to them without demanding extraordinary efforts on the part of others."); *see also Aben v. Dist. of Columbia*, 221 F.2d 110, 111 (D.C. Cir. 1955) (evidence of a weather report showing snow over a three-day period deemed insufficient to constitute notice of a dangerous condition).  Property managers do not have "on-going duty to monitor weather reports, to keep themselves apprised of changing weather predictions, and to rectify immediately any potentially dangerous accumulations[,]" and a "landlord is not required to be at his property" catching raindrops or falling leaves "before they hit the ground."  *See Croce*, 657 A.2d at 312 (citation and internal quotation marks omitted).  To that end, assuming *arguendo* that Defendant had constructive notice of the alleged leaves, which the Court does not concede, it is nonetheless afforded a reasonable grace period after accumulation to remove them.  *See id.* at 311 (collecting cases).

Indeed, it appears that Hall has since retreated somewhat from her contention that weather conditions might have contributed to her fall.  *See* Opp'n at 10–11.  In her Opposition, she states that she

> . . . does not contend that the condition was a factor in the cause of the incident any more than the lea[f] covering the hole that she fell on was wet. The wetness could have been from watering of the grass nearby or from any other source that sprays water. To the fact that there w[ere] wet loose leaves on the ground, the fact that there was no rain on the day of is not dispositive of the assertion that the leaves were wet. For example, leaves that have been rained upon or watered by any other means or made wet by dew can stay wet for days especially in cloudy conditions (more so when under shady areas around buildings or trees or other high and large objects) where there is no sustained daily direct sunlight or heat.

*Id.*   However, not only are these arguments offered without any citation to the record, they are also purely speculative, and "[t]he possibility that a [trier of fact] might speculate in the plaintiff's favor . . . is simply insufficient to defeat summary judgment." *Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 631 (D.C. Cir. 2010) (citation omitted).

Pivoting slightly, Hall cites to *Sinai v. Polinger, Co.*, 498 A.2d 520 (D.C. 1985), arguing that it is "up to the jury to be able to determine if the defendant should have seen the danger and corrected same," Opp'n at 6.   But in *Sinai*, the plaintiffs had legally ascertained "the quantum of care normally exhibited by landlords in similar circumstances, which was established by plaintiffs' evidence[,]" including "*six witnesses* [who] testified as to the principles of good property management prevalent in the community." *See Sinai*, 498 A.2d at 531–32 (emphasis added).   Here, the Court is without *any* testimony or evidence, expert or otherwise, to establish the applicable standard of care of the Capitol walkway, apart from Hall's untenable speculation. *See Montgomery v. Risen*, 197 F. Supp. 3d 219, 264 (D.D.C. 2016) (finding that a plaintiff cannot defeat summary judgment with "speculation and empty assertions unsupported by record evidence."), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017).

Hall also relies on *Hines v. Safeway Stores, Inc.*, 379 A.2d 1174 (D.C. 1978); however, the plaintiff in *Hines* submitted evidence that there was an obvious "pool of liquid on the floor of a supermarket for twenty minutes" within eight feet of a nearby assistant manager, *see id.* at 1174–75, creating a dispute of fact over constructive notice, *see id.* at 1175 ("constructive notice is but a shorthand way of saying that shopkeepers are under a duty to police their premises with enough frequency to prevent the existence of dangerous conditions for *unreasonably prolonged periods*.") (emphasis added).   Once again, Hall has failed to present any evidence showing the apparency or

the duration of the alleged pavement condition, leaving the trier of fact unable to determine whether its latency, if any, was reasonable.

Of course, a plaintiff may not necessarily know personally when a defect first occurred, but without any other supporting evidence, neither can the trier of fact. Notably, in the absence of any lay evidence establishing temporality, expert testimony may assist "in bridging" this evidentiary gap. *See Martin*, 206 F. Supp. 3d at 124. But Hall has not presented any expert opinion and, in fact, in her briefing, she insists that it is unnecessary. *See* Opp'n at 7–10. The court disagrees. *See* MSJ at 6–7.

Pursuant to the "expert testimony requirement," *see Dist. of Columbia v. Hampton*, 666 A.2d 30, 35–36 (D.C. 1995), "'[a] plaintiff must put on expert testimony to establish what the standard of care is if the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson[,]'" *Dist. of Columbia v. Arnold & Porter*, 756 A.2d 427, 433 (D.C. 2000) (quoting *Messina v. Dist. of Columbia*, 663 A.2d 535, 538 (D.C. 1995); *Dist. of Columbia v. Peters*, 527 A.2d 1269, 1273 (D.C.1987)); *accord Butera v. Dist. of Columbia*, 235 F.3d 637, 659 (D.C. Cir. 2001). "There is, however, a partial exception to this rule[,]" *Hampton*, 666 A.2d at 35, where "no expert testimony is needed if the subject matter is within the realm of common knowledge and everyday experience[,]" *Hill v. Metro. African Methodist Episcopal Church*, 779 A.2d 906, 908 (D.C. 2001) (citation and internal quotation marks omitted); *accord Daskalea v. Dist. of Columbia*, 227 F.3d 433, 445 (D.C. Cir. 2000).

Hall cites to a series of cases where courts found expert testimony unnecessary to determine the standard of care associated with the defendants' respective responses, or lack thereof, to a property defect. *See* Opp'n at 8–9. However, these cases are inapposite to the instant matter. *See* Reply at 3–4. She first cites to *Bostic v. Henkels and McCoy, Inc.*, 748 A.2d 421 (D.C. 2000),

11

where the court held that expert testimony was not required because there existed evidence that the alleged defect, a trench precariously covered by several unfastened plywood boards serving as a temporary sidewalk, ranging "half a block" long and three feet wide, and possessing large gaping holes, had existed for at least several months, obviating its potential danger to those with common knowledge. *See id*. at 422–23, 425–26. Hall skips over these details and the nuance of the *Bostic* opinion, including that court's determination that the "'common knowledge' exception to the expert testimony requirement is recognized only in cases in which everyday experience makes it clear that jurors could not reasonably disagree over the care required." *See Briggs v. Wash. Metro. Area Transit Auth*., 481 F.3d 839, 845 (D.C. Cir. 2007) (citing *Bostic*, 748 A.2d at 425–26) (other citations omitted). Here, the alleged hole in the pavement was not nearly as obvious as the trench arrangement in *Bostic*, and with no information as to duration of the hole's existence, a factfinder cannot plausibly determine the reasonableness of Defendant's reaction to its inherent danger, if any.

Hall next invokes *Dist. of Columbia v. Shannon*, 696 A.2d 1359 (D.C. 1997), where an expert was deemed unnecessary because a "reasonably prudent person, exercising reasonable care" could have recognized the potential danger of a defective metal playground slide that was missing guardrails and possessed two large holes in the metal pipes used as makeshift siderails—holes present long enough to have rusted over and which should have been closed pursuant to the manufacturer's specifications, *see id.* at 1362–63. Furthermore, there was deposition testimony that a maintenance employee actually noticed these defects and ignored them. *See id.* at 1362–64. The instant record bears out no such facts regarding the obviousness or the duration of any degradation in the Capitol walkway or Defendant's notice of same.

12

Similarly, Hall cites to *Gerber v. Columbia Palace Corp.*, 183 A.2d 398 (D.C. 1962), and *Trust v. Wash. Sheraton Corp.*, 252 A.2d 21 (D.C. 1969), wherein experts were not required to establish the standard of care, *see Gerber*, 183 A.2d at 399–400; *Trust*, 252 A.2d at 22.  But in both of those cases it was clear that the respective defects had existed for some time, and that the respective property owners had notice of the alleged defective conditions because they themselves actively *created* them.  *See Gerber*, 183 A.2d at 399; *Trust*, 252 A.2d at 21–22.

As noted in *Trust*, whether a trier of fact is as "competent and qualified as an expert to judge [a defective] condition" involves an analysis of "the surrounding circumstances."  *See Trust*, 252 A.2d at 22.  The surrounding circumstances in the cases cited by Hall are incompatible with her own facts.  It is plausible that, if there was clear lay evidence supporting her claims, an expert *could be* unnecessary, but the record does not afford any evidence regarding the duration or inherent dangerousness of the alleged defects; therefore, an expert might have assisted in bolstering Hall's allegations.  *See Harding*, 178 A.2d at 922*; see also Husovsky v. United States*, 590 F.2d 944, 950 (D.C. Cir. 1978) ("[T]he appropriate level of inspection and maintenance of a particular roadway depends not only on the expense and burden of various maintenance programs, but also on the characteristics of the surrounding land and the roadway itself, including the type and extent of dangers posed thereto.").  Indeed, Hall suggests as much in her own deposition testimony, indicating that, as a lay person, she is unequipped to fully communicate the nature of the defect in the stone pavement.  *See* Hall Depo at 34–35.

Accordingly, without any evidence, lay or expert, "that the dangerous condition[s] existed for such a duration of time that [Defendant] should have been aware of it if [it] had exercised reasonable care," Hall can neither prove constructive notice nor Defendant's deviation from any relevant standard of care, and this case cannot survive summary judgment.  *See Lynn v. Dist. of*

*Columbia*, 734 A.2d 168, 171 (D.C. 1999) (per curiam).  The Court notes that Hall tends to gloss over this absence of evidence, only minimally citing to the record, and chalking up any evidentiary loose ends to "credibility determinations," *see* Opp'n at 2, 6, to be made by the trier of fact, which will be presented with unspecified "possible" "liability evidence," *see id.* at 3, 7, 9.  However, aside from speculation, no such "liability evidence" has been introduced, and summary judgment is "not a dress rehearsal or practice run; it is the . . .  moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (citation and internal quotation marks omitted), *cert. denied*, 546 U.S. 1033 (2005).

Finally, and in any event, assuming the hole in the pavement was a defect, it was *de minimis*.  The United States "is not to be made an insurer of the safety of pedestrians using its sidewalks and is only required to maintain them in a reasonably safe condition."  *See Proctor v. Dist. of Columbia*, 273 A.2d 656, 659 (D.C. 1971); *Rajabi*, 650 A.2d at 1322 (D.C. 1994) (same).  Long-standing precedent holds "that minor sidewalk elevations are not an unusual condition for city sidewalks and are in fact what might be called a very prevalent condition."  *See Proctor*, 273 A.2d at 656, 658–59 (collecting cases and finding that "brick protruding one-quarter of an inch" on a District sidewalk, where the plaintiff tripped and fell, was "minor[,]" "trivial and inconsequential[,]" and thus insufficient to "support a finding of negligence."); *see also Turner v. Dist. of Columbia*, 144 A.2d 699, 700 (D.C. 1958) (finding that an "irregularity" in a sidewalk that "had upheaved to a peak about 3 ½ inches higher than its normal level . . . [sloping] downward to a depression somewhat below level, then up again to its usual grade" could not amount to an "unsafe condition as a matter of law."); *Williams*, 646 A.2d at 962–963 (finding one-half inch gap

between a median strip and a curb to be trivial and insufficient to constitute a dangerous condition).

In reality,

> it is a matter of common knowledge that it is impossible to maintain a sidewalk in a perfect condition. Minor defects are bound to exist. A municipality cannot be expected to maintain the surface of its sidewalks free from all inequalities and from every possible obstruction to travel. Minor defects due to continued use, or action of the elements, or other cause, will not necessarily make the city liable for injuries caused thereby. What constitutes a minor defect is not always a mere question of fact. If the rule were otherwise, the city would be held liable upon a showing of a trivial defect.

*Proctor*, 273 A.2d at 658 (citation omitted).  In other words, if such minor defects were actionable, it would hold governments infinitely strictly liable.  *See Fowler*, 497 A.2d at 462 n.11.

Instructive here is *Briscoe v. Dist. of Columbia*, 62 A.3d 1275 (D.C. 2013), where the trial court relied largely on photographs of the scene in granting summary judgment for the defendant, finding that an indentation in the city street where the plaintiff tripped and fell, which had existed for about two years "inconspicuously located at the edge of a curb," and ran "about two to three inches at most and about one inch deep . . . was so insignificant that no reasonable juror could find that [the defendant] had constructive notice of a defect that would need to be repaired[,]" *see id.* at 1277–78, 1280.  This is tantamount to the alleged hole in the Capitol walkway where Hall tripped and fell.  In affirming summary judgment in *Briscoe*, the D.C. Court of Appeals aptly quoted the trial court, noting that a minor "missing chunk" of pavement "is the kind of thing that . . . is all over the place."  *See id.* at 1279.

In sum, there is no genuine issue of material fact regarding whether the condition of the street was defective, or whether Defendant had actual or constructive notice and then failed to act for an unreasonable amount of time, thus violating any standard of care.  *See Williams*, 646 A.2d

at 963.  And even if a genuine issue of fact remained, as a matter of law, Hall "could not recover because any defect was *de minimis.*"  *Id.*

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment and enters judgment in Defendant's favor.  Hall's Motion for Leave to Attend the Trial Remotely, ECF No. 37, is **DENIED** as moot.  A separate order will issue contemporaneously.

Date:  10/28/24

ROYCE C. LAMBERTH
Senior United States District Judge